UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ANDREW B. SHARKEY,

  Petitioner,

  v.

DANIEL J. PARAMO,

  Respondent.

Case No. 14-cv-04695-VC (PR)

**ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY**

Andrew B. Sharkey has filed a *pro se* habeas petition challenging the validity of his conviction following a plea of no contest to murder, elder abuse, burglary and attempting to procure a person to commit perjury. Sharkey asserts that the trial court violated his constitutional right to conflict-free counsel, deprived him of effective assistance of counsel and deprived him of his right to counsel on his motion to withdraw his plea. Pet. at 5. The petition is denied.

**BACKGROUND**

On November 10, 2011, Sharkey pled no contest to the claims described above. In exchange, the prosecution dismissed a special circumstance allegation. 3 Clerk's Transcript ("CT") 436. On January 20, 2012, Sharkey filed a *pro se* motion to withdraw his plea, which the trial court denied. 8 Reporter's Transcript ("RT") 817. On February 24, 2012, the court sentenced Sharkey to 32 1/2 years to life in prison. 3 CT 497.

On August 12, 2013, the California Court of Appeal affirmed the judgment in a written opinion. *See People v. Sharkey*, 2013 WL 4086990 (Cal. Ct. App. Aug. 12, 2013) (unpublished). Sharkey filed a petition for review in the California Supreme Court, which was summarily denied on November 13, 2013. Exs. 8, 9. Sharkey did not file any state petitions for a writ of habeas corpus. On October 22, 2014, Sharkey filed this timely federal petition.

**LEGAL STANDARD**

A federal court may entertain a habeas petition from a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a district court may not grant habeas relief unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 412 (2000). State court factual determinations are presumed correct absent clear and convincing evidence to the contrary. *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (citing 28 U.S.C. § 2254(e)(1)). If the state court only considered state law, the federal habeas court must ask whether the state law, as explained by the state court, is "contrary to" clearly established federal law. *Lockhart v. Terhune*, 250 F.3d 1223, 1230 (9th Cir. 2001).

**DISCUSSION**

**I. Background**

Sharkey was initially represented by lead counsel Geoffrey Dunham and co-counsel Bruce Enos. 3 CT 330. After the preliminary hearing, Dunham became ill and Enos took over as lead counsel. 3 CT 330, 390. Sharkey filed a *Marsden* motion regarding Enos' representation based on the fact that Enos had served as a prosecutor in one or more drug cases in which Sharkey was the defendant. 4-A RT 368-70. Enos stated that he had no recollection of Sharkey's prior cases. 4-A RT 369-70. The court granted the motion on the ground that there was a conflict of interest. *Id.* Subsequently, Dunham hired Erik Bruce as lead counsel. 3 CT 391. The trial court rescinded all its past rulings on motions in limine and allowed the parties to file new motions. 3 CT 400. Bruce filed motions in limine, 3 CT 416-22, filed a motion to suppress Sharkey's statements, 3 CT 425-30, prepared for trial, 5 RT 457, proposed a juror questionnaire, 5 RT 474, and negotiated the plea agreement, 5 RT 454-56.

On November 10, 2011, Sharkey entered his no contest plea. 3 CT 440. The trial court

1   scheduled the sentencing hearing for January 20, 2012.  3 CT 465.  Three days before the hearing,
2   the trial court received Sharkey's *pro se* motion to withdraw his plea based on ineffective
3   assistance of counsel.  3 CT 476.  The court construed this to be a *Marsden* motion to substitute
4   counsel as well as a motion to withdraw the plea, and first held an *in camera* hearing on the
5   *Marsden* motion.  8 RT 755.  At this hearing, Sharkey moved for substitution of both Bruce and
6   Dunham on the ground that they had failed to confer with him, failed to subpoena witnesses that
7   Sharkey had identified, failed to investigate and failed to offer a defense at the preliminary
8   hearing.  8 RT 756-57; 4-A RT 762-63.  In regard to plea negotiations, Sharkey stated that he had
9   agreed to the plea under time pressure and the influence of medication, that he thought he could
10  maintain his innocence to the murder charge even while pleading no contest, that the plea
11  agreement did not allow him to serve his time in England, that counsel failed to inform him of the
12  sentence he could face if convicted of all charges, and that counsel had told him that no viable
13  defense could be provided at trial.  4-A RT 786-87, 790-94.  He also argued that, when Enos was
14  relieved as counsel, Dunham should have been relieved also and that, with Dunham's office
15  excluded, Bruce would not have been brought in under Dunham.  4-A RT 795.

16  Dunham stated that he had discussed "every part of his case with [Sharkey] over repeated
17  visits" and "disclosed to him what I believed to be every single piece of evidence against him, and
18  discussed them at length."  4-A RT 764.  Dunham also stated that he was prepared for the
19  preliminary examination, which was exhaustive, and that he did not offer an alibi defense at that
20  time because it was not supported by the evidence.  4-A RT 775.  Bruce explained the efforts of
21  the defense investigator to obtain exculpatory evidence, including going to Arizona to find
22  impeachable evidence on the prosecution's primary witness.  4-A RT 770.  With respect to plea
23  negotiations, Bruce stated that he met with Sharkey weekly, that Sharkey was lucid during their
24  discussions, "at all times [] appeared to understand what we were talking about," that he explained
25  the options to Sharkey, told him he "was under no obligation to take the deal" and that Sharkey
26  decided to accept it after weighing all the factors.  4-A RT 788-89.  Bruce also stated that he had
27  not told Sharkey that no defense would be offered at trial.  4-A RT 794.
28  The trial court supplemented the record with its observations that, during the plea hearing,

3

1    Bruce took special care to ensure that Sharkey understood the terms of the agreement and had
2    stopped the court several times to have a private conversation with Sharkey. 4-A RT 765. The
3    court noted that, during the preliminary hearing, Dunham was exhaustive and thorough in his
4    cross-examinations of witnesses and that it was rare for a defense attorney to call defense
5    witnesses or offer a defense at that stage in the proceedings. 4-A RT 776-77.

6    In ruling on the *Marsden* motion, the trial court cited California cases for the proposition
7    that new defense counsel should be appointed if counsel being challenged was not providing
8    adequate representation of the defendant, or if the defendant and counsel had such an
9    irreconcilable conflict in their relationship that ineffective assistance was likely to result. 4-A RT
10   797. The court denied the motion on the ground that it found neither an irreconcilable conflict nor
11   any deficiency in defense counsels' representation. 4-A RT 798.

12   The trial court then conducted a hearing in open court on Sharkey's motion to withdraw his
13   plea. Bruce stated that he did not consent to the filing of this motion and that, though he would
14   advise Sharkey on the motion, he thought Sharkey should proceed by himself and asked to
15   withdraw for purposes of this motion. 8 RT 800. The trial court acknowledged the awkwardness
16   of a represented defendant proceeding on his own motion, but denied Bruce's request to withdraw
17   and allowed Sharkey to proceed on his own. 8 RT 800-01. Sharkey asked the court if he should
18   make a *Faretta* motion to represent himself, but the court told him it would not advise him in the
19   matter. 8 RT 801. Sharkey did not make a *Faretta* motion and argued his motion to withdraw.

20   Sharkey's reasons to withdraw his plea were the same he offered in support of his *Marsden*
21   motion: he was medicated during one part of the plea negotiations; he was innocent of the murder
22   charge; Bruce told him he had no defense; and he would not be able to serve his sentence in
23   England. 8 RT 806-15. The prosecution rebutted the allegations that Sharkey was medicated
24   during plea negotiations, noting that the negotiations took place over a period of time and that
25   Sharkey had played an active role in them and had requested certain changes, some of which were
26   made. 8 RT 809. The court asked Bruce to respond to Sharkey's contention that Bruce had told
27   him that the plea agreement would allow him to serve his sentence in England. 8 RT 816. Bruce
28   replied that he told Sharkey this was a possibility, but that no promises were made. *Id.* The

4

1  prosecutor added that Bruce asked her if she would agree to this condition and she opposed it. *Id.*
2  When Sharkey insisted that this promise had been made to him, the court responded that it
3  "couldn't imagine that a promise would be made in that regard, since none of the attorneys would
4  have the ability to enforce such a situation. It was never brought up during the entry of the plea,
5  and certainly not in my experience on the court that in fact would be the case." 8 RT 817.

6  The trial court stated it had presided over the change of plea hearing, had reviewed the entire record, including the preliminary hearing and had "a rather vivid recollection of the proceedings in question, and of handling Mr. Sharkey's case." 8 RT 802. The court concluded that Sharkey had entered his plea knowingly, voluntarily and intelligently and that there had been no deficiency in representation. 8 RT 814. Accordingly, it denied Sharkey's motion to withdraw his plea. 8 RT 817.

**II. Right to Conflict-Free Counsel**

   **A. Conflict Based on Enos' Past Prosecution of Sharkey for Drug Offenses**

Sharkey argues that Enos' conflict extended to Dunham, his employer, and thus to Bruce, Dunham's new employee. Citing California cases such as *Adams v. Aeroject-General Corp.*, 86 Cal. App. 4th 1324, 1333 (2001), Sharkey contends that, "once the attorney is shown to have had probable access to former client confidences, the court will impute such knowledge to the entire firm, prohibiting all members of the firm from participating in the case." Citing *Pound v. DeMera Cameron*, 135 Cal. App. 4th 70, 78 (2005), Sharkey argues that "this rule extends to attorneys who are not part of the same firm, but who associate together as counsel to represent the same party when one of the associated attorneys previously represented an adverse party in a substantially related matter."

The Court of Appeal distinguished those cases because they involved conflict claims by prior clients who were concerned that confidential information obtained in the prior representation could be used adversely to that client, whereas Sharkey brought a claim as the current client. *See Sharkey*, 2013 WL 4086990, at *2. The court noted that Sharkey did not claim that Enos obtained confidential information during his prosecution of Sharkey that he could have shared with Dunham or Bruce, but only claimed that he was uncomfortable being represented by a former

5

1   district attorney. *Id.* at *2-3. The Court of Appeal held that the substitution of Bruce for Enos at
2   the first *Marsden* hearing addressed Sharkey's claim of a potential conflict by being represented
3   by a former district attorney. *Id.* at *3.

4     To establish a violation of the Sixth Amendment based on ineffective assistance of
5   counsel, a petitioner ordinarily must show both that counsel's performance was deficient and that
6   it was prejudicial. *Strickland v. Washington*, 466 U.S. 668, 685-86 (1984). The Supreme Court
7   has created "an exception" to this "general rule" where the petitioner can show "an actual conflict
8   of interest adversely affected his lawyer's performance;" in such circumstances prejudice is
9   presumed. *Cuyler v. Sullivan*, 446 U.S. 335, 348-50 (1980); *Mickens v. Taylor*, 535 U.S. 162,
10  166-72 (2002). The Supreme Court "limited" this exception "to joint representation," however,
11  and any extension of the exception "'outside of the joint representation context remain[s],'" as far
12  as the jurisprudence of the Supreme Court is concerned, "'an open question.'" *Earp v. Ornoski*,
13  431 F.3d 1158, 1184 (9th Cir. 2005). In the absence of an actual conflict, a claim based on a mere
14  potential or theoretical conflict must satisfy the two *Strickland* requirements—that counsel's
15  performance was objectively unreasonable and that the petitioner suffered prejudice as a result.
16  *Bonin v. Calderon*, 59 F.3d 815, 827 (9th Cir. 1995).

17    When a trial court is made aware of defense counsel's potential conflict of interest, it must
18  "either appoint separate counsel or . . . take reasonable steps to ascertain whether the risk [is] too
19  remote to warrant separate counsel." *Holloway v. Arkansas*, 435, U.S. 475, 484 (1978). Where
20  the state court makes factual findings, they are presumed to be correct and the petitioner has the
21  burden of rebutting the presumption of correctness by clear and convincing evidence. *Bragg v.*
22  *Galaza*, 242 F.3d 1082, 1087 (9th Cir. 2001) (addressing trial court hearing on conflict of
23  interest).

24    The record shows that, as soon as the trial court learned of Sharkey's claim of ineffective
25  assistance of counsel and his *pro se* motion to withdraw his plea, it held a hearing on these issues.
26  At the *Marsden* hearing, the trial court conducted a substantial inquiry into whether there was a
27  conflict necessitating substitution of counsel in connection with the motion to withdraw. The
28  court allowed Sharkey to air all of his grounds for ineffective assistance of counsel and allowed

6

Dunham and Bruce to respond. Sharkey also claimed that the initial conflict with Enos should have been imputed to Dunham and to Bruce. After this extensive hearing, the court found no irreconcilable conflict existed, and that Enos' conflict should not be imputed. This finding was upheld by the Court of Appeal which found that any conflict based on Enos' initial representation was addressed by the substitution of Bruce for Enos. This finding of fact is presumed correct unless rebutted by clear and convincing evidence. Sharkey submits no such evidence. And, as discussed below, Sharkey has not established ineffective assistance of Dunham or Bruce.

Therefore, the state court's denial of the claim of a conflict based on Enos' previous representation was not contrary to or an unreasonable application of clearly established federal law. *See Lockhart*, 250 F.3d at 1230. Accordingly, habeas relief on this claim is denied.

**B. Conflict Based on Claim of Ineffective Assistance of Counsel**

Sharkey also argues that his motion to withdraw his plea, which was based on ineffective assistance of counsel, created a conflict of interest with counsel. However, an attorney's representation of a defendant on a motion based on that attorney's asserted incompetence does not, in and of itself, require appointment of new counsel. *Jackson v. Ylst*, 921 F.2d 882, 887-88 (9th Cir. 1990) (addressing motion for new trial based on ineffective assistance of counsel); *Gray v. Gomez*, 84 Fed Appx. 756, 760 (9th Cir. 2003); *Freeman v. Lindsey*, 242 F.3d 381, 381 (9th Cir. 2000) (no Supreme Court decision clearly holds that state court must appoint substitute counsel whenever motion for new trial rests on alleged incompetence of counsel). And as discussed below, it was not unreasonable for the state courts to conclude that Sharkey's lawyers were not ineffective in connection with the motion to withdraw the plea (or in connection with any other portion of the proceedings).

**III. Ineffective Assistance of Counsel**

To prevail on a Sixth Amendment ineffectiveness of counsel claim, a petitioner must establish two things. First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms. *Strickland*, 466 U.S. at 687-88. A "doubly" deferential judicial review is appropriate in analyzing ineffective assistance of counsel claims under § 2254. *Cullen v. Pinholster*, 563 U.S. 170, 202

7

(2011); *Harrington*, 562 U.S. 86, 105 (2011); *Premo v. Moore*, 562 U.S. 115, 122-23 (2011). The general rule of *Strickland*, *i.e.*, to review a defense counsel's effectiveness with great deference, gives the state courts greater leeway in reasonably applying that rule, which in turn "translates to a narrower range of decisions that are objectively unreasonable under AEDPA." *Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010). When § 2254(d) applies, "the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105.

Second, a petitioner must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* Either prong under *Strickland* may be addressed first. *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

As discussed above, the trial court made a thorough inquiry into the reasons for Sharkey's dissatisfaction with his counsel. Sharkey's allegations regarding counsel's ineffective assistance were contradicted by counsel's statements at the *Marsden* hearing, by the trial court's own observations of counsel's representation of Sharkey during court proceedings and by the transcript of the plea hearing. 4-A RT 760-99 (transcript of in camera *Marsden* hearing); 6 RT 603-622 (transcript of plea hearing). As the Court of Appeal noted, "Although Sharkey and his counsel disagreed on the facts underlying many of his allegations, the court was entitled to accept counsel's explanations." *Sharkey*, 2013 WL 4086990, at *3.

Given the evidence presented at the *Marsden* hearing, it was not unreasonable for the Court of Appeal to uphold the trial court's denial of the *Marsden* motion based on the finding that counsel's performance had not been deficient.

**IV. Failure to Appoint Counsel on Motion to Withdraw Plea**

Sharkey argues that he was denied the right to counsel and due process because the trial court required him to argue the motion to withdraw his plea without the assistance of counsel.

The Court of Appeal denied this claim as follows:

8

> During the *Marsden* hearing, the trial court heard in great detail appellant's arguments that his trial counsel had been ineffective with respect to his plea agreement. At the conclusion of that hearing, the trial court rejected appellant's allegations that his counsel was ineffective with respect to his no contest plea, finding that there had been no "deficiency in [counsel's] representation whatsoever." Each basis argued by appellant in his motion to withdraw had been raised as a basis for his *Marsden* motion, considered by the court, and found insufficient. In effect, the trial court determined during the *Marsden* hearing that the motion to withdraw the plea was meritless, and therefore that appellant's counsel had properly refused to file it. We find no error in this determination, and affirm the denial of appellant's *Marsden* motion.

*Sharkey*, 2013 WL 4086990, at *4. Because counsel could not be compelled to file a meritless motion to withdraw the no contest plea, the Court of Appeal held that any error, if any, was the trial court's permitting Sharkey to pursue a frivolous motion despite counsel's refusal to file or argue it and any such error was harmless. *Id.* at *5. In a footnote, the Court of Appeal denied Sharkey's claim that he did not have counsel at the hearing on his motion to withdraw his plea because the trial court denied Bruce's request to withdraw. *Id.* at *5 n.2.

Counsel need not file frivolous motions. *Juan H. v. Allen*, 408 F.3d 1262, 1273 (9th Cir. 2005); *see also Santana v. Foulk*, 2015 WL 4661539, *36 (E.D. Cal. Aug. 5, 2015) (state court's determination that counsel's decision not to present a meritless motion to withdraw guilty plea not an unreasonable determination of federal law governing ineffective assistance of counsel); *Ruvalcaba v. Lewis*, 2012 WL 467848, *6 (C.D. Cal. Jan. 10, 2012) (California Court of Appeal reasonably determined that petitioner was not deprived of his right to counsel because trial counsel may decline to bring a frivolous motion to withdraw a plea); *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010) (to obtain relief on claim of ineffective assistance at plea stage, petitioner must show that decision to reject the plea would have been rational under the circumstances).

At the hearing on his motion to withdraw his plea, Sharkey made the same arguments he made at the *Marsden* hearing. His main argument was that, at the time of the plea agreement, he was under heavy depression medication and that, when Bruce first presented him with the plea agreement, it was at an unannounced appointment after Sharkey had awakened from a deep sleep from the medication. 6 RT 806-07. The district attorney responded that the plea negotiations had gone on over a period of time, that the final agreement was not the original one that was presented

9

to Sharkey and that, based on Sharkey's requests for certain additions or deletions, the plea agreement was changed. *Id.* at 809.

Sharkey also was adamant that he thought his no contest plea meant he was not pleading guilty to the murder charge but, based on a newspaper article stating that he pled guilty to all charges, he would not have accepted the plea. *Id.* at 804; 811-13. The court upheld the district attorney's objection to the newspaper article as extrinsic and irrelevant evidence that occurred after Sharkey entered a plea. *Id.* at 804-05. In regard to his claim that he was not pleading guilty to murder, the court reminded Sharkey that, during the plea proceedings, Bruce requested a recess to talk to Sharkey about this and that Bruce added an allegation in the record to that effect. *Id.* at 805. The court also pointed out that, at the plea hearing and with Sharkey's agreement, it had crossed out the word "guilty" on the plea agreement and replaced it with the phrase, "no contest." *Id.* at 806.

The record shows that, at both the *Marsden* hearing and the hearing on the motion to withdraw, the trial court listened to all of Sharkey's arguments about wanting to withdraw his plea and explained why they were not credible. The Court of Appeal's finding that the trial court had determined at the *Marsden* hearing that Sharkey's motion to withdraw his plea was frivolous was not an unreasonable finding of fact and must be deferred to on habeas review. And, the Court of Appeal's determination that counsel was not required to file a frivolous motion to withdraw the plea is not contrary to or an unreasonable application of established federal authority. As the Court of Appeal noted, although it might have been prudent for the trial court to have denied Sharkey the opportunity to argue on his own the motion to withdraw after it had denied his *Marsden* motion and had determined the motion was frivolous, it was harmless to allow Sharkey to do so.

Accordingly, this claim does not warrant habeas relief.

## CONCLUSION

The petition for a writ of habeas corpus is denied. A certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c). This is not a case in which "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*,

529 U.S. 473, 484 (2000).

      The Clerk shall enter judgment in favor of respondent and close the file.

      **IT IS SO ORDERED**.

Dated: January 28, 2016

_____
VINCE CHHABRIA
United States District Judge